William A. Delgado (Bar No. 222666)
wdelgado@willenken.com
Nhan T. Vu (Bar No. 189508)
nvu@willenken.com
Eileen M. Ahern (Bar No. 216822)
eahern@willenken.com
WILLENKEN WILSON LOH & DELGADO LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, California 90017
Telephone:  (213) 955-9240
Facsimile:   (213) 955-9250

Attorneys for Defendant
MICROSOFT CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW SOKOLOWSKI, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION; and DOES 1-100, inclusive,<br><br>Defendants. | Case No.: 12-CV-10641-DDP-FMOx<br><br>**DEFENDANT MICROSOFT CORPORATION'S MOTION TO COMPEL ARBITRATION AND STAY ACTION**<br><br>**Date:   January 28, 2013**<br>**Time:   10:00 a.m.**<br>**Place:   Courtroom 3**<br><br>Assigned to The Hon. Dean D. Pregerson |

127966.2

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that on January 28, 2013, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 3 of the above-entitled Court, located at 255 East Temple Street, Los Angeles, California, 90012, Defendant Microsoft Corporation ("Defendant" or "Microsoft") will move the Court for an order compelling plaintiff Andrew Sokolowski ("Plaintiff" or "Sokolowski") to arbitrate his individual claims against Microsoft and staying this action pending the arbitration.

The basis for this motion is set forth in the following Memorandum of Points and Authorities; to wit, Plaintiff entered into two agreements with Microsoft, both of which contain a valid and enforceable agreement to arbitrate under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*

This motion is based on this Notice, the Memorandum of Points and Authorities filed herewith, the Declarations of John Cowett and Marc DesCamp, Microsoft's Request for Judicial Notice, any reply papers submitted in support of this Motion, the records and pleadings on file herein, any oral argument as may be had in this matter, and such additional matters as this Court may consider.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on December 18, 2012.

Dated:  December 19, 2012             WILLENKEN WILSON LOH &
                                      DELGADO LLP


                                      By: */s/ William A. Delgado*
                                         William A. Delgado
                                         Attorneys for Defendant
                                         MICROSOFT CORPORATION

# <u>TABLE OF CONTENTS</u>

**<u>Page(s)</u>**

I.      INTRODUCTION ................................................................................. 1

II.     STATEMENT OF FACTS .................................................................... 3

    A.      Microsoft Surface Users Agree to Arbitrate Any Disputes on an Individual Basis ........................................................................... 3

        1.      The Surface Limited Warranty Requires Arbitration. ............... 3

        2.      The License Agreement Requires Arbitration. ........................... 5

    B.      Sokolowski Buys and Uses a Surface. ................................................. 8

    C.      Sokolowski Sues Microsoft After His Surface Prevents Him From Loading More Data Than It Can Store. ....................................... 8

III.    ARGUMENT. ....................................................................................... 8

    A.      Legal Standard. ................................................................................... 8

    B.      Sokolowski Agreed to the Surface Limited Warranty and the License Agreement. ........................................................................... 10

        1.      By Using the Surface, Sokolowski Agreed to the Surface Limited Warranty ................................................................. 10

        2.      Sokolowski Also Agreed to the License Agreement ................ 11

    C.      An Arbitrator Must Decide the Scope of the Arbitration Agreements. ...................................................................................... 12

    D.      An Arbitrator Also Must Decide the Validity of the Arbitration Agreements. ...................................................................................... 16

        1.      The Arbitration Clauses Are Not Unconscionable. .................. 17

            a.      The Arbitration Clauses Are No More Procedurally Unconscionable Than Any Other Form Contract ................................................................. 19

            b.      The Arbitration Clauses Are Not Substantively Unconscionable. ........................................................... 20

    E.      This Action Should Be Stayed Pending Arbitration. ........................... 23

IV.     CONCLUSION .................................................................................. 23

127966.2

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

4

### Federal Cases

5
*Adams v. AT&T Mobility LLC*,
   816 F. Supp. 2d 1077 (W.D. Wash. 2011) ........................................................22

6
*AT&T Mobility LLC  v. Concepcion*,
7
   __ U.S. __, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011).............................passim

8
*Boston Telecommunications Grp., Inc. v. Deloitte Touche Tohmatsu*,
   278 F. Supp. 2d 1041 (N.D. Cal. 2003) ............................................................16

9
*Burcham v. Expedia, Inc.*,
10
   2009 WL 586513 (E.D. Mo. 2009)....................................................................12

11
*Chandler v. AT&T Wireless Servs., Inc.*,
   358 F. Supp. 2d 701 (S.D. Ill. 2005)..................................................................11

12
*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
13
   207 F.3d 1126 (9th Cir. 2000) ..............................................................................9

14
*Circuit City, Inc. v. Adams*,
   279 F.3d 889 (9th Cir. 2002) ..............................................................................17

15
*Datel Holdings, Ltd. v. Microsoft Corp.*,
16
   712 F. Supp. 2d 974 (N.D. Cal. 2010) ...............................................................11

17
*Davis v. O'Melveny & Meyers*,
   485 F.3d 1066 (9th Cir. 2007) ............................................................................18

18
*Dean Witter Reynolds, Inc. v. Byrd*,
19
   470 U.S. 213, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985)......................................9

20
*Fadal Machining Ctrs., LLC v. Compumachine, LLC*,
   461 F. App'x 630 (9th Cir. 2011) .......................................................................13

21
*Feldman v. Google, Inc.*,
22
   513 F. Supp. 2d 229 (E.D. Pa. 2007) .................................................................12

23
*Garcia v. Dell, Inc.*,
   __ F. Supp. 2d __, 2012 WL 5928132 (S.D. Cal. Nov. 13, 2012) .....................16

24
*Green Tree Fin. Corp.-Alabama v. Randolph*,
25
   531 U.S. 79, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000).....................................17

26
*Hancock v. American Telegraph and Telephone Co., Inc.*,
   __ F.3d __, 2012 WL 6132070 (10th Cir. Dec. 11, 2012) .................................12

27
*Hill v. Gateway 2000, Inc.*,
28
   105 F.3d 1147 (7th Cir. 1997) ............................................................................10

*Hodsdon v. DirectTV, LLC,*
  2012 WL 5464615 (N.D. Cal. Nov. 8, 2012) ................................................20, 22

*Howsam v. Dean Witter Reynolds, Inc.,*
  537 U.S. 79, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) ..........................13

*Koresko v. RealNetworks, Inc.,*
  291 F. Supp. 2d 1157 (E.D. Cal. 2003) ................................................12

*Madrigal v. New Cingular Wireless Servs., Inc.,*
  2009 WL 2513478 (E.D. Cal. Aug. 17, 2009) ................................................13, 16

*Marmet Health Care Ctr., Inc. v. Brown,*
  __ U.S. __, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) ..........................18

*Mastrobuono v. Shearson Lehman Hutton, Inc.,*
  514 U.S. 52, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995) ..........................18

*Meridian Project Sys., Inc., v. Hardin Const. Co., LLC,*
  426 F. Supp. 2d 1101 (E.D. Cal. 2006) ................................................11

*Mitchell v. Research in Motion, Ltd.,*
  No. 2:11-CV-08872 (C.D. Cal. Dec. 4, 2012) ................................................20

*Momot v. Mastro,*
  652 F.3d 982 (9th Cir. 2011) ................................................13

*Morvant v. P.F. Chang's China Bistro, Inc.,*
  No. 4:11-CV-05405 (N.D. Cal. May 7, 2012) ................................................19

*Ness v. Prosvent, Inc.,*
  No. 2:11-CV-08098 (C.D. Cal. Nov. 29, 2011) ................................................10

*Nitro-Lift Techs., L.L.C. v. Howard,*
  __ U.S. ___, 133 S. Ct. 500 (2012) ................................................17

*Oracle Corp. v. SAP AG,*
  2008 WL 5234260 (N.D. Cal. Dec. 15, 2008) ................................................12

*Perry v. Thomas,*
  482 U.S. 483, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987) ..........................18

*Preston v. Ferrer,*
  552 U.S. 346, 128 S. Ct. 978, 169 L. Ed. 2d 917 (2008) ..........................18

*ProCD, Inc. v. Zeidenberg,*
  86 F.3d 1447 (7th Cir. 1996) ................................................11

*Provencher v. Dell, Inc.,*
  409 F. Supp. 2d 1196 (C.D. Cal. 2006) ................................................11

*Rent-A-Center, West, Inc. v. Jackson,*
  ___ U.S. ____, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) ..........................13, 16

*Scherk v. Alberto-Culver Co.*,
  417 U.S. 506, 94 S. Ct. 2449, 41 L. Ed. 2d 270 (1974) ........................................ 9

*Senior Services of Palm Beach, LLC v. ABSCP, Inc.*,
  2012 WL 2054971 (S.D. Fla. June 7, 2012) ...................................................... 17

*Sherr v. Dell, Inc.*,
  2006 WL 2109436 (S.D.N.Y. July 27, 2006) .................................................... 10

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 717 (9th Cir. 1999) ........................................................................... 14

*Soltani v. Western & Southern Life Ins. Co.*,
  258 F.3d 1038 (9th Cir. 2001) ......................................................................... 20

*Southland Corp. v. Keating*,
  465 U.S. 1, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984) ........................................... 18

*Specht v. Netscape Commc'ns Corp.*,
  306 F.3d 17 (2d Cir. 2002) .............................................................................. 12

*Steele v. Am. Mortgage Mgmt. Servs.*,
  2012 WL 5349511 (E.D. Cal. Oct. 26, 2012) .................................................. 22

*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp. 2d  904 (N.D. Cal. 2011) ............................................................ 12

*U.S. v. Drew*,
  259 F.R.D. 449 (C.D. Cal. 2009) ..................................................................... 12

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
  363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960) .................................... 14

*ValueSelling Assoc., LLC v. Temple*,
  2009 WL 3736264 (S.D. Cal. Nov. 5, 2009 ...................................................... 15

*Vernor v. Autodesk, Inc.*,
  621 F.3d 1102 (9th Cir. 2010) ......................................................................... 11

**State Cases**

*Abramson v. Juniper Networks*,
  115 Cal. App. 4th 638, 9 Cal. Rptr. 3d 422 (2004) .......................................... 21

*Armendariz v. Found. Health Psychare Servs., Inc.*,
  24 Cal. 4th 83, Cal. Rptr. 2d 745 (2000) ......................................................... 18

*Gatton v. T-Mobile USA, Inc.*,
  152 Cal. App. 4th 571, 61 Cal. Rptr. 3d 344 (2007) ............................... 18, 19, 20

*Kinney v. United HealthCare Svcs., Inc.*,
  70 Cal. App. 4th 1322, 83 Cal. Rptr. 2d 348 (1999) ........................................ 20

1

**Other Authorities**

2

Federal Arbitration Act, 9 U.S.C. § 2 ........................................................................9

3

Federal Arbitration Act, 9 U.S.C. § 3 .................................................................9, 23

4

Federal Arbitration Act, 9 U.S.C. § 4 ........................................................................9

5

H.R. Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924) ...............................................9

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MICROSOFT'S MOTION TO COMPEL ARBITRATION

127966.2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Sokolowski purchased a 32 gigabyte ("GB") Microsoft Surface (Microsoft's recently launched tablet computer) with Windows RT, brought it home, unpacked it, and used it.  But after loading music and Microsoft Word files to his new Surface, he consumed its storage space.  He now seeks to bring a class-action lawsuit on the theory Microsoft inadequately disclosed the preinstalled operating system, Windows RT, consumed a portion of the Surface's advertised storage space.

Sokolowski can't do that.

By using his Surface, Sokolowski gave up his right to take Microsoft to court over claims like those in his complaint.  He agreed instead to resolve any such dispute by arbitration on an individual (*i.e.*, non-class) basis.  He didn't have to do that.  If Solokowski did not want to arbitrate his claims or surrender his ability to participate in a class action, he could have returned the Surface to the Microsoft Store and received a refund (which Sokolowski admits he did not do).  Instead, he entered into *two* arbitration agreements providing for arbitration on an individual basis.

First, he agreed to the Surface Limited Warranty that came in the box with the device.  As the Surface Limited Warranty states, using the Surface constitutes acceptance of its terms.  To reject the terms, he could return the Surface for a refund.  The Surface Limited Warranty alerted Sokolowski upfront and in boldface type it contains a broad arbitration clause with a class-action waiver.  And the arbitration clause itself is set apart with a separate heading, and key features of arbitration (*e.g.*, the loss of a jury trial, the waiver of class-action participation) are set forth in boldface type.  In short, that valid and enforceable arbitration clause covers the claims in Sokolowski's complaint.

Second, Sokolowski agreed to the Microsoft Software License Agreement

("License Agreement") for Windows RT.  Indeed, Sokolowski could not have loaded music and Word files onto his Surface had he not first checked a box acknowledging he accepted the terms of the License Agreement and then clicked on a button labeled "Accept."  The License Agreement, like the Surface Limited Warranty, informed Sokolowski upfront and in boldface type it contained a broad arbitration clause and class-action waiver; set that clause apart with a separate heading; and recited the key features of arbitration in boldface type.  So, the License Agreement, like the Surface Limited Warranty, contains a valid and enforceable arbitration clause requiring this dispute be arbitrated on an individual basis.

Microsoft anticipates Sokolowski, himself a seasoned class-action lawyer, will advance the usual arguments in an effort to avoid his agreement to arbitrate this dispute.  He might say he did not assent to either the Surface Limited Warranty or the License Agreement; that the scope of the arbitration clauses does not cover his claims; or that the clauses are unconscionable.  None of these arguments has any merit.  Under well-established case law, Sokolowski assented to both the Surface Limited Warranty and the License Agreement.  Both agreements encompass the claims in Sokolowski's complaint (though, as an initial matter, the law dictates an arbitrator, rather than this Court, must decide any challenge to the clauses' scope).  And the mutual nature of the arbitration clauses together with their consumer-favorable financial incentives renders them reasonable (though the clauses also delegate any determination of their validity to the arbitrator).  Only by invoking outmoded, anti-arbitration rules the Supreme Court expressly invalidated in *AT&T Mobility LLC  v. Concepcion*, __ U.S. __, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) ("*Concepcion*"), and has continued to invalidate since, could Sokolowski possibly argue otherwise.

Microsoft's motion to compel arbitration should be granted.

## II.     STATEMENT OF FACTS

### A.     Microsoft Surface Users Agree to Arbitrate Any Disputes on an Individual Basis.

On October 26, 2012, Microsoft released a new tablet computer called the Surface with Windows RT (*i.e.*, a Surface running Windows RT as the operating system).  Compl. ¶¶ 14-15.  Microsoft offers two different models of the Surface RT: a 32 GB model and a 64 GB model.  *Id.* ¶ 15.

When a customer buys a Surface, he or she gets, in the same box with the device, a folded, quick-start instruction card with drawings to show how to set it up and use it.  Declaration of John Cowett, dated December 19, 2012 ("Cowett Decl.") ¶¶ 5, 7-9 Exs. A-C (photographs of the outside and inside of the Surface box).  The quick-start card sits inside the box just below the Surface device.  *Id.* Tucked inside the card as conspicuously as can be is a booklet ("the Surface Booklet") with safety instructions (*e.g.*, do not use the Surface near water) and the Surface Limited Warranty.  *Id.* ¶¶ 6, 10, 12, Exs. D, F.

#### 1.     *The Surface Limited Warranty Requires Arbitration.*

The Surface Limited Warranty begins on page 7 of the Surface Booklet. Booklet, p. 7 (Cowett Decl., Ex. F).  The first two sentences, which appear in bold, capital letters, state:

> **BY USING YOUR MICROSOFT SURFACE**
> **PURCHASED FROM AN AUTHORIZED**
> **RETAILER ("MICROSOFT HARDWARE") …**
> **YOU AGREE TO THIS WARRANTY.**
> **BEFORE USING IT, PLEASE READ THIS**
> **WARRANTY CAREFULLY.  IF YOU DO NOT**
> **ACCEPT THIS WARRANTY, DO NOT USE YOUR**
> **MICROSOFT HARDWARE OR ACCESSORY.**
> **RETURN IT UNUSED TO YOUR RETAILER OR**

**MICROSOFT FOR A REFUND**.

Surface Limited Warranty at Booklet, p. 7 (Cowett Decl., Ex. F).  The next sentence also appears in boldface type: "**If you live in the United States, Section 8 contains a binding arbitration clause and class action waiver.  It affects your rights about how to resolve a dispute with Microsoft.  Please read it.**" *Id.*

Section 8 of the Surface Limited Warranty, entitled "**Binding Arbitration and Class Action Waiver for U.S. Residents**," spans approximately 1.5 pages. *Id.* pp. 8-9.  Key provisions, such as those informing Sokolowski he is giving up his right to litigate before a judge or jury and to bring a class action, appear in boldface type.  *See, e.g., id.,* Surface Limited Warranty §§ 8(d) and 8(e).  Section 8(f) sets forth the arbitration procedure and begins, "Any arbitration will be conducted by the American Arbitration Association (the 'AAA'), under its Commercial Arbitration Rules and in many cases its Supplementary Procedures for Consumer-Related Disputes."  *Id.* § 8(f).  Section 8(f) also contains consumer-friendly provisions[1]:

- A consumer may file a claim in the small claims court in her or his county of residence or King County, Washington.

- In an arbitration involving $75,000 or less, Microsoft will reimburse the consumer for filing fees and pay the AAA's administrative fees and the arbitrator's fees and expenses.

- In a dispute involving $75,000 or less that proceeds to an award after the consumer rejects Microsoft's last written offer and the award

---

[1]  The preceding Section 7, entitled "Choice of Law," provides another consumer-friendly provision in that it requires application of the law of the *consumer's* home state, without regard to conflicts of law principles.  Surface Limited Warranty § 7 (Cowett Decl., Ex. F).

exceeds that offer, Microsoft agrees to pay the greater of the award or $5,000 *plus* twice the consumer's reasonable attorney's fees, if any, as well as any expenses (including expert witness fees and costs) that the consumer's attorney reasonably accrued in investigating, preparing and pursuing the claim in arbitration.

- Microsoft agrees not to seek its own attorneys' fees or costs even if it prevails.

- While the consumer may choose to commence arbitration in her or his county of residence or King County, Washington, Microsoft may commence arbitration only in the consumer's county of residence.

*Id.*

The Surface Limited Warranty is also available to consumers online.[2]

### 2. *The License Agreement Requires Arbitration.*

The Surface Limited Warranty is one of two agreements that requires arbitration. When users first turn on their new Surface, they must accept the License Agreement covering the operating system, Windows RT, or return the device for a refund. Without accepting the License Agreement, the Surface will not function. Declaration of Marc DesCamp, dated December 18, 2012 ("DesCamp Decl."), ¶ 5.

The first line under the large headline "License terms" advises, "Please read this so you know what you're agreeing to." *Id.,* Ex. G. Like the Surface Limited Warranty, the License Agreement contains boldface language near the beginning:

**The Additional Terms contain a binding arbitration**

**clause and class action waiver. If you live in the**

---

[2]   The Surface Limited Warranty is available at:
http://download.microsoft.com/download/3/F/3/3F3A867E-4893-4204-8845-E8FF1747A9CE/WDS%20Warranty%20U%20S%20-Canada%20(English).pdf.  Cowett Decl. ¶ 11, Ex. E.

**United States, these affect your rights to resolve a**

**dispute with the manufacturer or with Microsoft, and**

**you should read them carefully.**

**By accepting this agreement or using the software,**

**you agree to all of these terms and consent to the**

**transmission of certain information during activation**

**and for Internet-based features of the software.  If**

**you do not accept and comply with these terms, you**

**may not use the software or features.**  Instead, you may

contact the manufacturer to determine its return policy

and return the computer for a refund or credit under that

policy.

License Agreement ¶¶ 1-2 (DesCamp Decl., Ex. H).

Section 2 of the License Agreement's Additional Terms is entitled "**Binding Arbitration and Class Action Waiver**."  As in the Surface Limited Warranty, key elements are printed in boldface type.  *See, e.g.*, License Agreement §§ 2(d) and 2(e).  Section 2(f) describes arbitration procedures and invokes the AAA rules: "Any arbitration will be conducted by the American Arbitration Association (the 'AAA'), under its Commercial Arbitration Rules.  *Id.* § 2(f).  If you are an individual and use the software for personal or household use, or if the value of the dispute is $75,000 or less whether or not you are an individual or how you use the software, the AAA Supplementary Procedures Consumer-Related Disputes will also apply."  *Id.*  As in the Surface Limited Warranty, the License Agreement contains various consumer-friendly provisions relevant to this motion[3]:

---

[3]   Section 3 of the License Agreement's Additional Terms requires application of the law of the consumer's home state.  License Agreement § 3.

- A consumer may file a claim in the small claims court in her or his county of residence or in King County, Washington. *Id.* § 2(c).
- In a dispute worth $75,000 or less, Microsoft will reimburse the consumer for filing fees and pay for the AAA's and the arbitrator's fees and expenses. *Id.* § 2(g)(i).
- In a dispute involving $75,000 or less that proceeds to an award after the consumer rejects Microsoft's last written offer, and the award exceeds that offer, Microsoft agrees to pay *all* of the following: (i) the greater of the award or $1,000; (2) twice the consumer's reasonable attorney's fees, if any; (3) any expenses (including expert witness fees and costs) that the consumer's attorney reasonably accrued in investigating, preparing and pursuing the claim in arbitration. *Id.*
- Microsoft agrees not to seek its own attorneys' fees or costs even if it prevails. *Id.* § 2(g)(iii).
- The consumer may choose to commence the arbitration in her or his county of residence or King County, Washington. *Id.* § 2(j).

The user can scroll down the screen to read the terms in their entirety. DesCamp Decl. ¶ 6. To proceed beyond the License Agreement screen and use the Surface, the user must check this box: "I accept the license terms for using Windows" *and* click on a blue "Accept" button. *Id.* ¶ 7. If users would like to review the terms of the License Agreement later, they can access it on the Surface at any time. *Id.* ¶ 8.

The License Agreement, like the Surface Limited Warranty, is also available online.[4]

---

[4] The Microsoft License Agreement is available online at: http://www.microsoft.com/about/legal/en/us/intellectualproperty/useterms/default.aspx before or after purchase. DesCamp Decl. ¶ 9, Ex. H.

MICROSOFT'S MOTION TO COMPEL ARBITRATION

7

127966.2

**B.      Sokolowski Buys and Uses a Surface.**

Sokolowski is a sophisticated class-action lawyer who litigates extensively in this District.  Request for Judicial Notice, dated December 19, 2012, Exs. I-M. He alleges he purchased a 32 GB Surface RT from the Microsoft Store in Century City.  Compl. ¶ 7.  Then he used it by loading music files and Microsoft Word documents onto his device.  *Id*. ¶ 20.

Sokolowski does not allege the box with his Surface was missing a Surface Limited Warranty or he was able to start using his Surface without clicking the "I accept" box and "Agree" button on the License Agreement terms page.  Nor does he allege he tried to return the Surface for a refund at any point.

**C.      Sokolowski Sues Microsoft After His Surface Prevents Him From Loading More Data Than It Can Store.**

In the course of using his Surface, Sokolowski tried to load too much data. He was notified some of his files could not be loaded because they would exceed the device's storage space.  Compl. ¶ 20.

So Sokolowski sued.  He filed a complaint against Microsoft in state court alleging: (i) violations of the Consumers Legal Remedies Act ("CLRA"), *Cal. Civ. Code* §§ 1750 *et seq*.; (ii) false advertising in violation of *Cal. Bus. & Prof. Code* §§ 17500 *et seq*.; and (iii) unfair business practices in violation of *Cal. Bus. & Prof. Code* §§ 17200 *et seq*.  All three claims rest on a single premise: Microsoft inadequately disclosed a portion of the Surface's storage space (approximately 16 GB in a 32 GB model) would be consumed by the Windows RT operating system that comes preinstalled.  Compl. ¶ 18.

Microsoft removed the case to this Court.  This motion follows.

**III.   ARGUMENT.**

**A.      Legal Standard.**

Under the Federal Arbitration Act ("FAA"), an agreement to submit commercial disputes to arbitration shall be "valid, irrevocable, and enforceable,

---

MICROSOFT'S MOTION TO COMPEL ARBITRATION

8

1  save upon such grounds as exist at law or in equity for the revocation of any

2  contract." 9 U.S.C. § 2.  Congress's intent in passing the Act was to put

3  arbitration agreements "'upon the same footing as other contracts,'" thereby

4  "reversing centuries of judicial hostility to arbitration agreements" and allowing

5  the parties to avoid "'the costliness and delays of litigation.'"  *Scherk v. Alberto-*

6  *Culver Co.*, 417 U.S. 506, 510-11, 94 S. Ct. 2449, 41 L. Ed. 2d 270 (1974)

7  (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924)).

8  　　　Under the FAA, any party bound by an arbitration agreement within the

9  scope of the FAA may bring a petition in federal district court to compel

10  arbitration. 9 U.S.C. § 4.  When deciding a motion to compel arbitration, the

11  district court's role is rigidly circumscribed.  "By its terms, the [FAA] 'leaves no

12  place for the existence of discretion by a district court, but instead mandates that

13  district courts shall direct the parties to proceed to arbitration on issues as to which

14  an arbitration agreement has been signed."  *Chiron Corp. v. Ortho Diagnostic*

15  *Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds,*

16  *Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985)).  "The

17  court's role under the Act is therefore limited to determining (1) whether a valid

18  agreement to arbitrate exists and, if it does, (2) whether the agreement

19  encompasses the dispute at issue … .  If the response is affirmative on both

20  counts, then the Act requires the court to enforce the arbitration agreement in

21  accordance with its terms."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d

22  at 1130.  Where a plaintiff is compelled to arbitrate, the district court shall stay the

23  action until the arbitration ends.  9 U.S.C. § 3.

24  　　　For ease of analysis, Microsoft splits the two-prong test in *Chiron* into

25  three: (1) Was there an agreement? (2) Does the agreement apply to Sokolowski's

26  claims? (3) Is the agreement enforceable?  The answer to each is "yes," but this

27  Court answers the first and the arbitrator the last two.

28

**B.      Sokolowski Agreed to the Surface Limited Warranty and the License Agreement.**

      **1.**      *By Using the Surface, Sokolowski Agreed to the Surface Limited Warranty.*

The Surface Booklet containing the Limited Warranty is conspicuously placed in the box inside the quick-start instruction card right below the Surface device.  A user cannot unfold and read the instruction card without seeing the Booklet.  The Limited Warranty states in plain language at the beginning in **boldface** type that using the Surface constitutes acceptance of the Limited Warranty.   Surface Limited Warranty at Booklet, p. 7 (Cowett Decl., Ex. F).  It states just as plainly how a consumer can avoid being bound: return the Surface for a refund if he or she does not agree to its terms.  *Id.*  Sokolowski used his Surface by loading music and Microsoft Word files onto it and did not return it.  Compl. ¶ 20.

The Surface Limited Warranty is a "shrinkwrap" agreement, and courts in California and across the country regularly hold that keeping a product, instead of returning it, constitutes acceptance of such an agreement—including any arbitration clause—where, as here, the agreement so provides.  *See, e.g., Ness v. Prosvent, Inc.*, No. 2:11-CV-08098 (C.D. Cal.  Nov. 29, 2011) (Minute Order, Docket No. 22) at 3 ("Plaintiff received a guide in the package he received from Defendant.  The arbitration agreement was on the thirteenth page of this guide and explicitly stated that failure to return the package within fourteen days would be construed as consent to the arbitration agreement.  Plaintiff's failure to object to the arbitration agreement indicated his consent to be bound."); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149 (7th Cir. 1997) ("By keeping the computer beyond 30 days, the Hills accepted Gateway's offer, including the arbitration clause."); *Sherr v. Dell, Inc.*, 2006 WL 2109436, at *3 (S.D.N.Y. July 27, 2006) ("The customer need only return the product according to the return policy in

127966.2

order to reject the Agreement.  By keeping his computer, Sherr voluntarily accepted the Agreement's terms, including its binding arbitration provision, through his conduct."); *Chandler v. AT&T Wireless Servs., Inc.*, 358 F. Supp. 2d 701, 704 (S.D. Ill. 2005) (holding that subscriber accepted arbitration terms in the AT&T Welcome Guide received in a phone's package by accepting the phone and using the service); *see also Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1104-05 (9th Cir. 2010) (enforcing shrinkwrap license agreement for software); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1449 (7th Cir. 1996) ("Shrinkwrap licenses are enforceable unless their terms are objectionable on grounds applicable to contracts in general (for example, if they violate a rule of positive law, or if they are unconscionable)."); *Provencher v. Dell, Inc.*, 409 F. Supp. 2d 1196 (C.D. Cal. 2006) (enforcing a standard "approve-or-return" contract under Texas law); *Meridian Project Sys., Inc., v. Hardin Const. Co., LLC*, 426 F. Supp. 2d 1101, 1106-07 (E.D. Cal. 2006) (surveying cases, finding the reasoning of *ProCD*, *supra*, compelling, and finding a license agreement to be an enforceable contract because, among other things, the plaintiff had the opportunity to return the product but did not); *Datel Holdings, Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 989 (N.D. Cal. 2010) ("The weight of authority … including in this district, is that shrinkwrap licenses are enforceable.").

Here, Sokolowski's use of the Surface constitutes unambiguous acceptance of the Surface Limited Warranty's terms, including its binding arbitration clause and class-action waiver.

**2.**    *Sokolowski Also Agreed to the License Agreement.*

The License Agreement is a "clickwrap" agreement,[5] which Sokolowski

---

[5]    "This kind of online software license agreement has come to be known as 'clickwrap' (by analogy to 'shrinkwrap,' used in the licensing of tangible forms of software sold in packages) because 'it presents the user with a message on his or her computer screen, requiring that the user manifest his or

accepted by checking the box entitled "I accept the license terms for using Windows" and clicking on a blue "Accept" button.  Like shrinkwrap agreements, clickwrap agreements are enforced routinely.  *See, e.g.*, *U.S. v. Drew*, 259 F.R.D. 449, 462 n.22 (C.D. Cal. 2009) ("Clickwrap agreements 'have been routinely upheld by circuit and district courts.'") (citing *Burcham v. Expedia, Inc.*, 2009 WL 586513 at *2-3 (E.D. Mo. 2009)); *Hancock v. American Telegraph and Telephone Co., Inc.*, __ F.3d __, 2012 WL 6132070, at *5 (10th Cir. Dec. 11, 2012) ("Clickwrap agreements are increasingly common and have been routinely upheld.") (internal quotations omitted); *Oracle Corp. v. SAP AG*, 2008 WL 5234260, at *7 (N.D. Cal. Dec. 15, 2008) ("Plaintiffs have stated a claim for breach of contract, based on the existence of the clickwrap agreements.  Many courts have found clickwrap agreements to be enforceable."); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d  904, 912 (N.D. Cal. 2011) (enforcing a "modified" clickwrap agreement where the agreement did not provide the terms but, rather, a hyperlink to the terms); *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 237 (E.D. Pa. 2007) (enforcing clickwrap agreement and collecting cases); *Koresko v. RealNetworks, Inc.*, 291 F. Supp. 2d 1157 (E.D. Cal. 2003) (enforcing forum selection clause in a clickwrap agreement).

By checking the License Agreement's acceptance box and clicking on the "Accept" button, Sokolowski agreed to a second, enforceable agreement with Microsoft to arbitrate disputes related to the Surface with Windows RT.

## C.   An Arbitrator Must Decide the Scope of the Arbitration Agreements.

"The question of whether the parties have submitted a particular dispute to arbitration, *i.e., the question of arbitrability*, is an issue for judicial determination

her assent to the terms of the licensing agreement by clicking on an icon.  The product cannot be obtained or used unless and until the icon is clicked." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 40 n.4 (2d Cir. 2002).

1    unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean*

2    *Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002)

3    (italics in the original) (internal quotation marks omitted); *Rent-A-Center, West,*

4    *Inc. v. Jackson*, ___ U.S. ____, 130 S. Ct. 2772, 2777-78, 177 L. Ed. 2d 403

5    (2010) ("The delegation provision is an agreement to arbitrate threshold issues

6    concerning the arbitration agreement.  We have recognized that parties can agree

7    to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have

8    agreed to arbitrate or *whether their agreement covers a particular controversy*.")

9    (emphasis added); *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011)

10    ("Although gateway issues of arbitrability presumptively are reserved for the

11    court, the parties may agree to delegate them to the arbitrator.").

12        Here, the arbitration agreements in the Surface Limited Warranty and the

13    License Agreement delegate to the arbitrator the "gateway" issue of whether their

14    scope encompasses Plaintiff's claims.  Specifically, they invoke the AAA

15    Commercial Arbitration Rules.  *See* Surface Limited Warranty § 8(f) (Cowett

16    Decl., Ex. F); License Agreement § 2(f) (DesCamp Decl., Ex. H).  And AAA

17    Commercial Rule 7 provides: "The arbitrator shall have the power to rule on his or

18    her own jurisdiction, including any objections with respect to the existence, scope

19    or validity of the arbitration agreement."  Request for Judicial Notice, Ex. N;

20    *Fadal Machining Ctrs., LLC v. Compumachine, LLC*, 461 F. App'x 630, 632 (9th

21    Cir. 2011) (incorporation of AAA's Commercial Arbitration Rules "shows a clear

22    and unmistakable intent to delegate questions of scope to the arbitrator");

23    *Madrigal v. New Cingular Wireless Servs., Inc.*, 2009 WL  2513478, *5 (E.D.

24    Cal. Aug. 17, 2009) ("Numerous courts have examined the language in Rule 7 and

25    concluded that, when incorporated into an arbitration agreement, it clearly and

26    unmistakable [*sic*] evidences the parties' intent to arbitrate the scope of the

27    arbitration agreement, *i.e.,* to arbitrate whether a claim or claims falls(s) within the

28    scope of the arbitration agreement"; collecting cases in support), *aff'd on*

1    *reconsideration*, 2010 WL 5343299 (E.D. Cal. Dec. 20, 2010).

2          But even if this Court were to conduct its own independent analysis,

3    Sokolowski's claims plainly fall within the scope of both arbitration agreements.

4          "The standard for demonstrating arbitrability is not high."  *Simula, Inc. v.*

5    *Autoliv, Inc.*, 175 F.3d 717, 719 (9th Cir. 1999).  "To require arbitration,

6    [plaintiff's] factual allegations need only 'touch matters' covered by the contract

7    containing the arbitration clause and all doubts are to be resolved in favor of

8    arbitrability."  *Id*. at 721.  Indeed, the Supreme Court has emphasized that courts

9    should refer a matter for arbitration "unless it may be said with *positive assurance*

10   that the arbitration clause is not susceptible of an interpretation that covers the

11   asserted dispute."  *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,

12   363 U.S. 574, 582-83, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960) (emphasis added).

13   "In the absence of an express provision excluding a particular grievance from

14   arbitration…only the most forceful evidence of a purpose to exclude the claim

15   from arbitration can prevail."  *Id*. at 584-85.

16         The broad arbitration clauses to which Sokolowski agreed easily clear that

17   low hurdle.  Section 8(a) of the Surface Limited Warranty provides:

18              This section applies to any dispute **EXCEPT IT DOES**

19              **NOT INCLUDE A DISPUTE RELATING TO THE**

20              **ENFORCEMENT OR VALIDITY OF YOUR,**

21              **MICROSOFT'S, OR EITHER OF OUR**

22              **LICENSORS' INTELLECTUAL PROPERTY**

23              **RIGHTS**.  Dispute means any dispute, action, or other

24              controversy between you and Microsoft concerning the

25              Microsoft Hardware or Accessory (including its price) or

26              this warranty, whether in contract, warranty, tort, statute,

27              regulation, ordinance, or any other legal or equitable

28              basis.  "Dispute" will be given the broadest possible

---

MICROSOFT'S MOTION TO COMPEL ARBITRATION

14

1             meaning allowable under law.

2   Surface Limited Warranty § 8(a) (Cowett Decl., Ex. F) (emphasis in the original).

3   And similarly, Section 2(a) of the License Agreement provides:

4             This Section 2 applies to any dispute **EXCEPT IT**

5             **DOES NOT INCLUDE A DISPUTE RELATING TO**

6             **THE ENFORCEMENT OR VALIDITY OF YOUR,**

7             **THE MANUFACTURER'S, MICROSOFT'S, OR**

8             **EITHER OF OUR LICENSORS' INTELLECTUAL**

9             **PROPERTY RIGHTS.** Dispute means any dispute,

10            action, or other controversy between you and the

11            manufacturer, or you and Microsoft, concerning the

12            software (including its price) or this agreement, whether

13            in contract, warranty, tort, statute, regulation, ordinance,

14            or any other legal or equitable basis. "Dispute" will be

15            given the broadest possible meaning allowable under

16            law.

17  License Agreement § 2(a) (DesCamp Decl., Ex. H) (emphasis in the original); *see*

18  *also* License Agreement Heading "What does this agreement apply to?" to which

19  the License Agreement replies, "This agreement…applies to the software, the

20  media on which you received the software (if any), and any Microsoft updates,

21  supplements, and services for the software, unless other terms come with them."

22  DesCamp Decl., Ex. H p. 8.

23        Both arbitration clauses apply to "any" dispute, provide an expansive list of

24  illustrative "disputes"[6], and define "dispute" as broadly as the law allows. *See*

25  *ValueSelling Assoc., LLC v. Temple*, 2009 WL 3736264, at *2 (S.D. Cal. Nov. 5,

26

27  _____

28  [6]   The exception for intellectual property rights disputes is not implicated here.

2009 ("A clause providing for the arbitration of '*any* claim or controversy arising out of or relating to the agreement' has been held to be the paradigm of a broad clause.") (emphasis added); *Boston Telecommunications Grp., Inc. v. Deloitte Touche Tohmatsu*, 278 F. Supp. 2d 1041, 1046 (N.D. Cal. 2003) ("courts are to construe arbitration agreements broadly in favor of coverage").

Here, the foundation of Sokolowski's claims is this: Microsoft allegedly violated California law because it inadequately disclosed the Windows RT operating system consumed approximately half of the storage space in the 32 GB Surface model.  Such claims not only "touch upon," but relate directly to "matters covered by" the Surface Limited Warranty, because they relate to representations regarding the Surface's hardware (*i.e.*, the device's overall storage capacity).  Similarly, such claims also plainly "touch upon" the Windows RT operating system, where Sokolowski alleges Microsoft's preinstallation of the Windows RT operating system on his Surface device consumed space he thought he could use for other files.

Thus, although the arbitrator must resolve the matter, it is clear Plaintiff's claims fall squarely within both arbitration clauses' scope.

**D.    An Arbitrator Also Must Decide the Validity of the Arbitration Agreements.**

Microsoft anticipates Sokolowski may argue the arbitration agreements are unconscionable and cannot be enforced.  But because the parties also agreed to delegate the *validity* of the arbitration agreements to the arbitrator (per AAA Commercial Rule 7), the arbitrator, not this Court, must resolve this issue as well. *See, e.g., Garcia v. Dell, Inc.*, __ F. Supp. 2d __, 2012 WL 5928132, at *4 (S.D. Cal. Nov. 13, 2012) ("Under *Rent-A-Center*, the delegation provision of the Agreement should be enforced and *any* issue of enforceability should be decided by an arbitrator." (emphasis added)); *Madrigal*, 2009 WL 2513478, at *7 ("Contending the arbitration agreement is unconscionable, Plaintiffs dispute the

1  validity of the agreement made, not that they ever made an arbitration agreement to

2  begin with.  Accordingly § 4 does not preclude an order compelling Plaintiffs to

3  comply with their agreement to arbitrate their dispute as to the validity of the

4  arbitration agreement."); *Senior Services of Palm Beach, LLC v. ABSCP, Inc.,*

5  2012 WL 2054971, at *2-3 (S.D. Fla. June 7, 2012) (arbitrator should decide

6  unconscionability where the parties delegated this power by incorporating the

7  AAA rules).

8         **1.**    *The Arbitration Clauses Are Not Unconscionable.*

9       Even if this Court were to independently examine the issue of

10  unconscionability, it would see the agreements here are not unconscionable.

11       "[T]he party resisting the arbitration bears the burden of proving the claims

12  at issue are unsuitable for arbitration."  *Green Tree Fin. Corp.-Alabama v.*

13  *Randolph*, 531 U.S. 79, 91-92, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000).  Grounds

14  for declaring an arbitration agreement unenforceable are determined by "ordinary

15  state-law principles that govern the formation of contracts."  *Circuit City, Inc. v.*

16  *Adams*, 279 F.3d 889, 892 (9th Cir. 2002).  At the same time, however, only state

17  law that treats arbitration agreements and other agreements evenhandedly applies.

18  As the Supreme Court made clear in *Concepcion*, the FAA preempts the

19  application of any state law that facially or practically singles out arbitration

20  agreements.  *Concepcion*, 131 S. Ct. at 1748.  In addition, the FAA preempts state

21  laws that, while not singling out arbitration agreements, nevertheless have the

22  effect of "interfer[ing] with fundamental attributes of arbitration."  *Id.*

23       It is hard to imagine a rule that is any more categorical.  "States cannot

24  require a procedure that is inconsistent with the FAA, even if it is desirable for

25  unrelated reasons."  *Id.* at 1753.  And the Supreme Court has enforced the rule

26  repeatedly, both after *Concepcion* and before.  *See Nitro-Lift Techs., L.L.C. v.*

27  *Howard*, ___ U.S. ___, 133 S. Ct. 500 (2012) (FAA forecloses "judicial hostility

28  towards arbitration" inherent in state-law rule that requires court to decide validity

1    of non-compete agreements even where agreement expressly delegates that task to

2    arbitrator); *Marmet Health Care Ctr., Inc. v. Brown*, __ U.S. __, 132 S. Ct. 1201,

3    182 L. Ed. 2d 42 (2012) (FAA preempts West Virginia's prohibition against

4    predispute agreements to arbitrate personal-injury or wrongful-death claims against

5    nursing homes); *Preston v. Ferrer*, 552 U.S. 346, 356, 128 S. Ct. 978, 169 L. Ed.

6    2d 917 (2008) (FAA preempts state law granting state commission exclusive

7    jurisdiction to decide issue the parties agreed to arbitrate); *Mastrobuono v.*

8    *Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56, 115 S. Ct. 1212, 131 L. Ed. 2d 76

9    (1995) (FAA preempts state law requiring judicial resolution of claims involving

10   punitive damages); *Perry v. Thomas*, 482 U.S. 483, 491, 107 S. Ct. 2520, 96 L. Ed.

11   2d 426 (1987) (FAA preempts state-law requirement that litigants be provided a

12   judicial forum for wage disputes); *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104

13   S. Ct. 852, 79 L. Ed. 2d 1 (1984) (FAA preempts state financial investment

14   statute's prohibition of claims brought under that statute).

15         Under California law[7], an arbitration agreement is unenforceable only if *both*

16   procedurally *and* substantively unconscionable.  *Davis v. O'Melveny & Meyers*,

17   485 F.3d 1066, 1072 (9th Cir. 2007) (citing *Armendariz v. Found. Health Psychare*

18   *Servs., Inc.*, 24 Cal. 4th 83, 99, Cal. Rptr. 2d 745 (2000)); *Gatton v. T-Mobile USA,*

19   *Inc.*, 152 Cal. App. 4th 571, 579, 61 Cal. Rptr. 3d 344 (2007) ("*Gatton*")

20   ("Unconscionability has a procedural and a substantive element; the procedural

21   element focuses on the existence of oppression or surprise and the substantive

22   element focuses on overly harsh or one-sided results.").  "The analysis employs a

23

24   [7]   Sokolowski, a California resident, filed this case in California.  Both choice-of-
25        law provisions require the application of the law of the consumer's home state.
          Surface Limited Warranty § 7 (Cowett Decl., Ex. F); License Agreement § 3
26        (DesCamp Decl., Ex. H).  Therefore, California law controls whether the
          arbitration clauses are unconscionable unless the FAA preempts it for singling
27        out arbitration or interfering with fundamental attributes of arbitration.
28        *Concepcion*, 131 S. Ct. at 1748.

1  sliding scale: the more substantively oppressive the contract term, the less evidence

2  of procedural unconscionability is required to come to the conclusion that the term

3  is unenforceable, and vice versa." *Gatton*, 152 Cal. App. 4th at 579 (internal

4  quotation marks omitted).

5          **a.**     <u>The Arbitration Clauses Are No More Procedurally</u>

6                  <u>Unconscionable Than Any Other Form Contract.</u>

7  As the *Gatton* Court explained:

8      The procedural element of unconscionability analysis

9      concerns the manner in which the contract was

10      negotiated and the circumstances of the parties at that

11      time. The element focuses on oppression or surprise.

12      Oppression arises from an inequality of bargaining power

13      that results in no real negotiation and an absence of

14      meaningful choice. Surprise is defined as the extent to

15      which the supposedly agreed-upon terms of the bargain

16      are hidden in the prolix printed form drafted by the party

17      seeking to enforce the disputed terms.

18  *Id.* at 581 (internal quotation marks and citations omitted).

19  Here, Sokolowski cannot claim "surprise." The arbitration clause is not

20  hidden or otherwise obscured in a prolix form. To the contrary, the Surface

21  Limited Warranty announces upfront and in boldface type it contains an

22  arbitration clause and class-action waiver. The arbitration clause itself is set apart

23  in its own section with its own boldface heading. And the clause highlights the

24  most important provisions (*e.g.*, the loss of a trial, the class action waiver) in

25  boldface type. *See Morvant v. P.F. Chang's China Bistro, Inc.*, No. 4:11-CV-

26  05405 (N.D. Cal. May 7, 2012) (Order, Docket No. 64) ("Even a cursory review

27  of the Arbitration Agreement reveals that the arbitration provisions are not hidden

28  and thus, there was no unfair surprise about the terms to the Arbitration

1   Agreement.").

2   Thus, the most that can be said is the Surface Limited Warranty and the

3   License Agreement are garden-variety adhesive form contracts, which are

4   inherently "minimally procedurally unconscionable," but no more. *Mitchell v.*

5   *Research in Motion, Ltd.*, No. 2:11-CV-08872 (C.D. Cal. Dec. 4, 2012) (Order,

6   Docket No. 39), p. 5 ("[M]any contracts of adhesion are minimally procedurally

7   unconscionable, but not necessarily (or even typically) substantively

8   unconscionable in a manner that survives *Concepcion*."); *see also Hodsdon v.*

9   *DirectTV, LLC*, 2012 WL 5464615, at *6 (N.D. Cal. Nov. 8, 2012) ("In all, the

10  Court finds that DirecTV's arbitration provision is minimally procedurally

11  unconscionable due to the adhesive nature of the contract and thus, in the balance,

12  turns to the question of substantive unconscionability."). Accordingly, it must be

13  enforced unless it has a "high degree of substantive unconscionability," *see*

14  *Gatton*, 152 Cal. App. 4th at 585, which it most certainly does *not*.

15          **b.**    The Arbitration Clauses Are Not Substantively
16                    Unconscionable.

17          "The substantive element of unconscionability analysis focuses on overly

18  harsh or one-sided results." *Gatton*, 152 Cal. App. 4th at 586; *see also Soltani v.*

19  *Western & Southern Life Ins. Co.*, 258 F.3d 1038, 1043 (9th Cir. 2001)

20  (substantive unconscionability "'focuses on the terms of the agreement and

21  whether those terms are so one-sided as to *shock the conscience*.'") (quoting

22  *Kinney v. United HealthCare Svcs., Inc.*, 70 Cal. App. 4th 1322, 1330, 83 Cal.

23  Rptr. 2d 348, 353 (1999)). Here, the arbitration clauses do not come close to

24  being so "overly harsh" or "one-sided" as to "shock the conscience." *See id.*

25          First, the arbitration clauses have the requisite mutuality, requiring *both*

26  Microsoft *and* Sokolowski to arbitrate the vast majority of their disputes. Surface

27  Limited Warranty § 8(a)-(d) (Cowett Decl., Ex. F); License Agreement § 2(a)-(d)

28  (DesCamp Decl., Ex. H). Where a specific dispute is expressly excluded from

---

MICROSOFT'S MOTION TO COMPEL ARBITRATION

20

arbitration (*e.g.*, a dispute regarding intellectual property), the agreements exclude *both* Microsoft *and* Sokolowski from compelled arbitration. *Id.* Such mutuality is the bedrock of a fair, reasonable agreement. *Abramson v. Juniper Networks*, 115 Cal. App. 4th 638, 656-57, 9 Cal. Rptr. 3d 422 (2004) ("Courts have identified a number of factors that may result in substantive unconscionability. But the paramount consideration in assessing conscionability is mutuality.").

In any event, to the extent any of the provisions are "one-sided," most favor Sokolowski. For example, both arbitration clauses invoke the law of the *consumer's* state. Surface Limited Warranty § 7; License Agreement § 3. Under both agreements, consumers like Sokolowski retain the right to file a claim in the small claims court in their county in lieu of arbitration. Surface Limited Warranty § 8(c); License Agreement § 2(c). In the event arbitration is filed, the clauses allow for arbitration in Sokolowski's county of residence rather than forcing him to travel to Microsoft's home in Washington.

Perhaps Sokolowski intends to challenge the arbitration clauses as unconscionable because of the presence of the class-action waivers. *Concepcion* forecloses that argument. As the Supreme Court there held, requiring class arbitration where the parties did not expressly agree to it "interferes with fundamental aspects of arbitration." *Concepcion*, 131 S. Ct. at 1748. In addition, both the Surface Limited Warranty and the License Agreement contain consumer-favorable financial incentives for Microsoft to resolve the matter quickly and amicably. Indeed, Microsoft's consumer-friendly clauses, detailed above at pages 4-6, mirror those before the Supreme Court in *Concepcion*. *See Concepcion*, 131 S. Ct. at 1744 (AT&T agreed to pay all costs for nonfrivolous claims; arbitration had to take place in county where customer was billed; for claims $10,000 or less, the customer could choose whether to proceed in person, by telephone, or by submission; either party could bring a claim in small claims court in lieu of arbitration; the arbitrator could award any form of individual relief; AT&T was

1   denied the ability to seek reimbursement of its attorneys' fees; and, if a customer

2   received an arbitration award greater than AT&T's last written settlement offer,

3   AT&T was required to pay a $7,500 minimum recovery and twice the amount of

4   the claimant's attorney's fees).  The Supreme Court in *Concepcion* noted the

5   district court's observation that, in light of these terms, "the Concepcions were

6   better off under their arbitration agreement with AT&T than they would have been

7   as participants in a class action, which 'could take months, if not years, and which

8   may merely yield an opportunity to submit a claim for recovery of a small

9   percentage of a few dollars.'"  *Id.* at 1753 (citations omitted).  And as a legal

10  matter, those consumer-friendly provisions do not even enter into the preemption

11  analysis in the first place.  *Any* encroachment on the goals of the pro-arbitration

12  FAA is prohibited.  *Hodsdon*, 2012 WL 5464615, at 7 (explaining that the

13  "premise … that the *Concepcion* ruling was dependent on the consumer-friendly

14  aspects of the provision at issue in that case was" "faulty"); *Adams v. AT&T*

15  *Mobility LLC*, 816 F. Supp. 2d 1077, 1088 (W.D. Wash. 2011) ("The court …

16  observes that the decision in *Concepcion* did not depend on the relatively

17  consumer-friendly terms of" the arbitration agreement at issue there.).

18         In sum, Sokolowski cannot make *any* showing of substantive

19  unconscionability, let alone a showing of a "high degree of substantive

20  unconscionability" as required for this Court to find the arbitration clauses

21  unenforceable here.  *See, e.g.*, *Steele v. Am. Mortgage Mgmt. Servs.*, 2012 WL

22  5349511, at *9 (E.D. Cal. Oct. 26, 2012) (enforcing procedurally unconscionable

23  arbitration clause because the clause was not "*permeated* by substantive

24  unconscionability" (emphasis added)).  Of course, as Microsoft explained earlier at

25  pages 16-17, the arbitrator should resolve the issue of unconscionability because

26  the parties' express delegation of the "validity" of the arbitration clause.  Request

27  for Judicial Notice, dated December 19, 2012, Ex N (AAA Commercial

28  Arbitration Rule 7).

127966.2

**E.      This Action Should Be Stayed Pending Arbitration.**

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."  9 U.S.C. § 3.

Pursuant to Section 3 of the FAA, Microsoft respectfully requests that this matter be stayed pending arbitration.

**IV.    CONCLUSION**

Sokolowski entered into two agreements with Microsoft containing enforceable arbitration clauses and class-action waivers.  Both agreements contain unambiguous delegation provisions, leaving to the arbitrator the issues of whether their scope captures Sokolowski's claims and whether the arbitration clauses are valid and not unconscionable.  In any event, the answer to both those questions is "yes."  For all the reasons set forth in this Memorandum, Microsoft respectfully requests its motion to compel arbitration and stay this action be granted.

Dated:  December 19, 2012           WILLENKEN WILSON LOH &
                                    DELGADO LLP


                                    By: */s/ William A. Delgado*
                                        William A. Delgado
                                        Attorneys for Defendant
                                        MICROSOFT CORPORATION

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Electronic Service List for this Case.

Dated:  December 19, 2012  WILLENKEN WILSON LOH & DELGADO LLP


By: *<u>/s/ William A. Delgado</u>*
  William A. Delgado
  Attorneys for Defendant
  MICROSOFT CORPORATION

127966.2